UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____ X
J.Z., on behalf of herself and her child A.F., and S.S. on behalf of
herself and her child E.S.,

                                    Plaintiffs,          Civ. No. 23-9779

                                                            COMPLAINT

            - against -


NEW YORK CITY DEPARTMENT OF EDUCATION,
THE BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK,
CHANCELLOR DAVID BANKS IN HIS OFFICIAL
CAPACITY, AND THE CITY OF NEW YORK,

                                    Defendants.
_____X


## PRELIMINARY STATEMENT

1.      This is an action alleging that Defendants, the New York City Department of Education

("DOE"), the Board of Education of the City School District of the City of New York ("BOE"),

Chancellor David Banks, in his official capacity, and the City of New York (collectively

"Defendants"), violated Plaintiffs' rights under the Individuals with Disabilities Education

Improvement Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, 42 U.S.C. § 1983 ("Section 1983"), and

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), the Americans with

Disabilities Act of 1990 ("ADA"), as well as New York State law, which is incorporated by

reference into the IDEA. This action also raises systemic claims.

2.      Defendants have repeatedly denied and are currently denying A.F., a 16-year-old special

education student in the Bronx, and S.S., an 11-year old special education student in Queens,

necessary educational services, including feeding therapy, to which they are entitled under the law.

3.      For at least the past six years, the DOE has failed to provide A.F. a free appropriate public education ("FAPE") and J.Z. has had to litigate to ensure A.F. receives appropriate services necessary for a FAPE. Nonetheless, despite her success in the administrative hearings, Defendants then fail to implement favorable orders and A.F.'s stay-put pendency program, leaving A.F. to languish and regress and causing physical harm to A.F., without mandated essential services for months and years.

4.      Similarly, for approximately the same time period, the DOE has failed to provide E.S. a FAPE and S.S. has had to litigate every year to ensure S.S. receives services necessary for a FAPE. Defendants then fail to fully and timely implement orders and E.S.'s stay-put pendency program, which includes vision services and feeding therapy, causing E.S. to regress without these necessary services.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over Plaintiffs' federal claims under the IDEA pursuant to 20 U.S.C. § 1415, 42 U.S.C. § 1988, and as an action raising a federal question under 28 U.S.C. § 1331.

6.      Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) as it is the judicial district in which Defendants are situated and/or reside.

## PARTIES

4.      Plaintiff J.Z. is the mother and natural guardian of A.F., a sixteen-year-old boy who has been diagnosed with autism.[1]  J.Z. and A.F. reside in the Bronx, New York.

5.      A.F. is a student with a disability who is eligible for a Free Appropriate Public Education

---

[1] Initials are used throughout this Complaint to preserve the confidentiality of sensitive medical, educational, and disability-related information under the IDEA and the Family Educational Rights and Privacy Act of 1974 (FERPA) and in accordance with Federal Rule of Civil Procedure 5.2(a)(3).

("FAPE") under the IDEA.  A.F. is a qualified individual with a disability who is eligible for a FAPE under Section 504 and is protected from discrimination based upon his disability.

6.      Plaintiff S.S. is the mother and natural guardian of E.S., an almost twelve-year-old boy who has multiple disabilities, including CHARGE syndrome.[2]

7.      E.S. is a student with a disability who is eligible for a FAPE under the IDEA.  E.S. is a qualified individual with a disability who is eligible for a FAPE under Section 504 and is protected from discrimination based upon his disability.

8.      Upon information and belief, Defendant NEW YORK CITY DEPARTMENT OF EDUCATION is a local educational agency ("LEA") as defined in the IDEA, and thus bears the responsibilities of an LEA under the IDEA and in the New York State Education Law.

9.      Upon information and belief, Defendant DOE is charged with the responsibility of developing policies with respect to the administration and operation of the public schools in the City of New York, including programs and services for students with disabilities.  N.Y. Educ. Law § 2590-g.

10.     Defendant THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK is the official body charged with the responsibility of developing policies with respect to the administration and operation of the public schools in the City of New York.

11.     Upon information and belief, Defendant DAVID BANKS ("the Chancellor"), is the Chancellor of the New York City School District and, as such, is entrusted with the powers and duties set forth in N.Y. Educ. Law § 2590-h.

---

[2] CHARGE syndrome is a genetic disorder which often results in eye issues, heart defects, nasal issues, growth and/or developmental retardation and abnormalities, and hearing loss and/or deafness. It is a complex syndrome, involving a variety of medical and physical complications and difficulties.

12.     Defendants DOE, BOE and the Chancellor jointly and/or individually constitute the LEA under the IDEA and state law.

13.     The DOE is a municipal agency and a creation of the BOE pursuant to its bylaws.

14.     Defendant CITY OF NEW YORK ("City") is a municipal entity created and authorized under the laws of the State of New York.

15.     Defendants BOE and DOE are agencies of Defendant City, which is ultimately responsible for managing those agencies, funding special education services, and implementing the relief requested pursuant to this action.

16.     All Defendants jointly and/or individually are recipients of federal financial assistance.

17.     When the "DOE" is referenced throughout, the term DOE refers individually to Defendants DOE, as well as collectively to Defendants DOE, BOE, and the Chancellor.

<u>LEGAL FRAMEWORK</u>

15.     The IDEA guarantees that all eligible children with disabilities, ages three through twenty-one, must be offered a FAPE.  20 U.S.C. § 1412(a)(1).

16.     A FAPE must meet each student's "unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d) (1) (A)-(B).

17.     A FAPE must "include an appropriate . . . secondary school education in the State involved" and be provided in conformity with an IEP.  *See* 20 U.S.C. §§ 1401(9), 1414(d)(2)(A); 8 N.Y.C.R.R. § 200.4(e)(1)(ii).

18.     All children who have one or more of thirteen disabling conditions, which includes autism, and who, by reason of his/her disability, require "special education" and "related services" are entitled to a FAPE.  34 C.F.R. § 300.8(a)(1).

19.     The DOE is responsible for providing a FAPE to all eligible children in New York City and for promulgating policies and procedures in accordance with the IDEA.

20.     Every child with a designated disability classification is entitled to an Individualized Education Program, or "IEP" and the LEA (here, Defendants) must provide an IEP which must is individually tailored to each student and is meant to serve as a blueprint for each child's special education services.  20 U.S.C. § 1414(d).

21.     By the beginning of each school year, the DOE must have an IEP in place that offers a FAPE to each eligible child.  20 U.S.C. § 1414(d)(2).

22.     Before an IEP can be developed, a child must be evaluated in accordance with detailed procedures outlined in federal and state law.

23.     A child is reevaluated in accordance with the same standards at least once every three years, or more frequently if a parent or school district believes it is necessary.

24.     Among other things, an IEP must be developed by a properly constituted IEP team that includes particular members, including the parent and a district representative who is knowledgeable about the services and able to commit district resources.   20 U.S.C. § 1414(d)(1)(B).

25.     The IEP team must meet at least annually, and more frequently, if necessary, to modify a child's services and/or to address "[a] lack of expected progress toward the annual goals and in the general education curriculum."  20 U.S.C. § 1414(d)(4)(A)(ii)(I).

26.     The IDEA broadly defines the categories of services that must be offered, which include, but are not limited to, special education, related services, supplementary aids and services, transition services, assistive technology ("AT"), and positive behavioral supports and services (collectively "Special Education Services").

27.     The IDEA prescribes, in detail, the process for developing IEPs and their contents.  20 U.S.C. § 1414(d)(1)(A), (d)(2); 34 C.F.R. §§ 300.320(a)(2)-(3); 300.324; N.Y. Educ. Law § 4401, *et seq.;* and 8 N.Y.C.R.R.§ 200.4(d)(2)(iii)

28.    For example, an IEP must contain the results of a child's most recent evaluations, as well as an accurate and consistent description of his/him strengths and present levels of academic achievement and functional performance (called "Present Levels of Performance" or "PLPs").  20 U.S.C.  § 1414(d)(1)(A).

29.    An IEP must contain "a statement of the special education and related services and supplementary aids and services, . . . , to be provided to the child, or on behalf of the child, and a statement of the program modification or supports for school personnel that will be provided for the child."  20 U.S.C. § 1414(d)(1)(A)(i)(IV).

30.    Each IEP must also contain research-based instructional strategies unless they are not feasible, including positive behavioral interventions and supports for children whose behavior impedes their learning and/or that of others. 34 C.F.R. §§ 300.320(a)(4), 300.324(a)(2)(i); 8 N.Y.C.R.R. §§ 200.4(d)(2)(v)(b), 200.4(d)(3)(i).

31.    An IEP team must also consider whether a student would benefit from assistive technology ("AT").  34 C.F.R. §§ 300.5, 300.6, 300.105, 300.324(a)(2)(v).

32.    The DOE is obligated to make decisions about IEPs, services and placements based on student's individual needs, and not policies, procedures or availability of resources.

33.    The school district, here the DOE, must ensure that "[a]s soon as possible following development of the IEP, special education and related services are made available to the child in accordance with the child's IEP."  34 C.F.R. § 300.323(c)(2).  There must be "no delay in implementing" a student's IEP.  34 C.F.R. § 300.103(c).

34.    One of the IDEA's most well-known due process rights is the right to file a due process complaint ("DPC") requesting an impartial hearing "with respect to any matter relating to the identification, evaluation, or educational placement of [a] child" or the provision of FAPE to a child.  20 U.S.C. § 1415(b)(6)(A).

35.    Under the IDEA, when a parent files a DPC, the student is automatically entitled to continue in his "stay-put" (also called "pendency") educational program throughout the pendency of the proceedings.  20 U.S.C. § 1415(j).  The DOE is responsible for implementing a student's pendency program.

36.    The IDEA sets forth detailed requirements for hearing procedures.  20 U.S.C. §1415(f); 34 C.F.R. §§ 300.511-516.

37.    In New York City, the DOE is responsible for ensuring that impartial hearings comport with the IDEA's requirements and for implementing the orders of the impartial hearing officers. 20 U.S.C. § 1415(f)(1)(A).

38.    A parent that prevails in a due process hearing is entitled to have the school district, here the Defendants, pay their reasonable attorney's fees.

<u>FACTS</u>

**Plaintiff J.Z. and A.F.**

38.    A.F. has been diagnosed with and is classified as having autism.  A.F. also has asthma.

39.    For at least the past six years, the DOE has failed to provide A.F. a FAPE and J.Z. has had to file DPCs so that A.F. receives appropriate services necessary for a FAPE.

40.    As a result of his autism, A.F. exhibits a variety of pervasive deficits across all domains – academic, cognitive, behavioral, communication, social, functional, and physical – and engages in maladaptive behaviors.

41.    A.F. has a limited attention span.

42.    A.F. has delays in the areas of expressive and receptive language, fine and gross motor skills, cognition, focus, attention, eye contact, behavior, socialization, and activities of daily living ("ADL").

43.    A.F. also exhibits severe sensory and feeding issues.  He subsists mainly on pureed food because he refuses to ingest solid foods.

44.    In 2014, when A.F. was seven years old, he underwent a clinical swallowing evaluation at Bellevue Hospital.  The results indicated that A.F. exhibits "severe oral acceptance deficit" and an oral aversion to solid foods.  At that time, the evaluation recommended speech/feeding therapy 3-5 times per week.

45.    In 2017, A.F. underwent a feeding and swallow assessment, which continued to recommend feeding therapy, as well as other feeding accommodations, including close supervision during meals.

46.    Although A.F. has been mandated to receive feeding therapy for many years, the DOE has failed to provide it or otherwise arrange for the services.  As a result, A.F. has not received feeding therapy for approximately the past four years, when he attended Atlas.

47.    As a result of the DOE's failure to provide A.F. any feeding therapy, A.F.'s health is deteriorating and he is losing weight.  Also, he will not cooperate with dental care, causing dental health issues. His health situation is becoming dire and J.Z. wants to avoid the use of a feeding tube to ensure his nutritional needs are met.

48.    At times, A.F. did not eat for extended periods because he cannot always self-feed.

49.    A.F. is verbal but has limited reading and communication abilities.

50.    A.F. initially attended a DOE school in District 75 ("D75"), which provides schools for students who require significant support.

51.    During the 2017 school year, the DOE and J.Z. agreed that he was not making appropriate progress in the D75 school and it was recommended *inter alia* that A.F. attend a school with a classroom ratio of 8:1+1 (8 students for every one teacher plus one aide).

52.    The DOE failed to identify an appropriate school that would meet A.F.'s needs.

53.     Pursuant to an IDEA administrative hearing, an impartial hearing officer ("IHO") found the Atlas School to be an appropriate program for A.F., which he then began attending.

54.     By the end of the 2018-2019 school year, however, the Atlas School was no longer meeting A.F.'s educational needs.

55.     J.Z. informed the DOE that she was unaware of an appropriate school for A.F. but the DOE failed to respond.  The DOE failed to hold an IEP meeting and to offer a placement for the 2019-2020 school year.

56.     The DOE has repeatedly failed to create IEPs for A.F. and to offer appropriate programs that provide a FAPE, or any program, to A.F.  This has required J.Z. to repeatedly file due process complaints against the DOE to seek appropriate FAPE programs and services.

**IH Case No. 183806 and 2019-2020 School Year**

57.     On or about June 27, 2019, J.Z., through counsel, filed a due process complaint ("DPC") alleging a denial of FAPE for the 2019-2020 school year because the DOE failed to offer an IEP and placement before the start of the school year, July 1, 2019.  Defendants designated this DPC Impartial Hearing ("IH") Case Number ("No.") 183806.  The allegations in this DPC are incorporated herein by reference.

58.     The IHO issued a pendency order dated September 9, 2019 in favor of J.Z. and A.F., ordering a full-time ABA program (at home or a center) for A.F. as his pendency, to which the DOE consented was his pendency.

59.     For the 2019-2020 school year, A.F. received a full-time ABA program at home. He has continued to receive, or was supposed to receive, all of his educational services at home or a center-based program since 2019, because the DOE has not offered, and does not have, any appropriate schools for A.F. to attend to meet all of his special education needs.

9

60.     At the impartial hearing in IH Case No. 183806, the DOE did not present any witnesses, any evidence, or an affirmative case establishing that it provided A.F. a FAPE for the 2019-2020 school year.  Moreover, the DOE did not contest J.Z.'s request for relief.

61.     In a Findings of Fact and Decision dated June 10, 2020 ("183806 FOFD"), the IHO found in favor of Plaintiffs that A.F. was denied a FAPE for the 2019-2020 school year and ordered, *inter alia*, the DOE to fund and/or reimburse Plaintiffs for A.F.'s full day 1:1 applied behavior analysis ("ABA") program with related services, including individual feeding therapy 5x60 minutes per week.  The IHO also ordered compensatory relief for missed related services.

62.     The Defendants failed to appeal the 183806 FOFD.

63.     The DOE did not, however, implement all elements of his pendency and the 183806 FOFD, including but not limited to the DOE's failure to calculate and award A.F. the compensatory banks, thus denying her access to and the ability to use the compensatory award.

64.     Additionally, A.F. did not receive a significant amount of services from March through June, 2020 due to the Covid pandemic.

**IH Case No. 194889 and the 2020-2021 School Year**

65.     Once again, the DOE failed to create an IEP for A.F. and to offer any placement for A.F. for the 2020-2021 school year.

66.     The Parent filed a due process complaint ("194889 DPC") on June 30, 2020, which Defendants designated as IH Case No. 194889.  The allegations in the 194889 DPC are incorporated herein by reference.

67.     Based on the 183806 FOFD, the parties entered into an agreement on or about June 30, 2020, concerning A.F.'s pendency program, which included (a) a full-time ABA program, (b) speech-language therapy ("SLT") 5 times per week for 60-minute sessions (5x60), (c) 5x60 occupational therapy ("OT") per week, (d) 5x60 feeding therapy per week, (e) 2 hours per week

of parent counseling and training ("PCAT"), (f) 5 hours per week of Board Certified Behavior Analyst ("BCBA") supervision, (g) special education transportation, and (h) a 12-month school year for all services (collectively, "A.F.'s FAPE program").

68.     The DOE, however, failed to implement A.F.'s pendency during the 2020-2021 school year.

69.     Due to delays in the impartial hearing system, IH Case No. 194889 was not assigned an impartial hearing officer until November 20, 2020.

70.     Once again, the DOE failed to offer any evidence to support its burden in establishing that it provided A.F. a FAPE at the impartial hearing in IH Case No. 194889.

71.     In a decision dated March 11, 2021, the IHO issued a Findings of Fact and Decision in IH Case No. 194889 ("194889 FOFD") in favor of J.Z. and A.F., ordering continuation of A.F.'s FAPE program for the 2020-2021 school year and awarding compensatory banks for missed related services.

72.     The Defendants failed to appeal the 194889 FOFD.

73.     The DOE did not, however, implement all elements of A.F.'s pendency and the 194889 FOFD, including but not limited to a failure to provide all of his services and a failure to calculate the compensatory award.

**IH Case No. 209251 and the 2021-2022 School Year**

74.     Once again, the DOE failed to create an IEP for A.F. and to offer any placement for A.F. for the 2021-2022 school year .

75.     The Parent filed a due process complaint ("209251 DPC") on June 30, 2021, which Defendants designated as IH Case No. 209251.   The allegations in the 209251 DPC are incorporated herein by reference.

76.    Based on the 194889 FOFD, the parties entered into an agreement on or about December 10, 2021, concerning A.F.'s pendency, agreeing that he was entitled to continuation of A.F.'s FAPE program.

77.    Due to delays in the impartial hearing system, IH Case No. 209251 was not assigned an impartial hearing officer until December 15, 2021, almost six months after J.Z. filed her DPC.

78.    Once again, the DOE failed to offer any evidence to support its burden in establishing that it provided A.F. a FAPE, or contesting relief, at the impartial hearing in IH Case No. 209251.

79.    In a decision dated January 11, 2023, the IHO issued a Findings of Fact and Decision in IH Case No. 209251 ("209251 FOFD") in favor of J.Z. and A.F., finding once again that the DOE denied A.F. a FAPE, and awarding compensatory relief, which the DOE was ordered to calculate within 30 days of the decision.

80.    The 209251 FOFD specifically provides: "If the parent makes a request in writing and/or email for the DOE to find and/or provide the services directly, the DOE must do so within fifteen days of the request.

81.    The Defendants failed to appeal the 209251 FOFD.

82.    The DOE failed to calculate the compensatory award as ordered.

83.    The DOE did not implement all elements of A.F.'s pendency and the 209251 FOFD, and in particular the DOE has failed to find a provider or directly provide A.F.'s related services, despite a written request to do so.

**IH Case No. 244877 and the 2022-2023 SY**

84.    On or about January 13, 2023, J.Z. filed another due process complaint, this time alleging a denial of FAPE for the 2022-2023 SY.  Defendants designated this DPC as IH Case No. 244877.

85.    Same as in prior years, the DOE failed to create any IEP for A.F. and to offer any placement for the 2022-2023 SY.

86.    In a Corrected Interim Order on Pendency dated September 27, 2023, the IHO ordered that his pendency consists of A.F.'s FAPE program, and included the provision that the DOE must find and/or provide the services if J.Z. makes a written request to do so.

87.    On or about September 28, 2023, J.Z., through counsel, did make a written request for the DOE to find and/or provide providers for A.F.'s SLT, OT, and feeding therapy mandates. The DOE, however, failed to respond in any way to J.Z.'s request.

88.    As a result of the DOE's failures, A.F. has not received SLT, OT, and feeding therapy for a significant period of time.

**Plaintiff S.S. and E.S.**

89.    E.S. has significant and serious health issues due to his CHARGE syndrome. E.S. has suffered numerous breathing-related complications, including chronic respiratory failure, reactive airway disease, and sleep apnea. E.S. has hearing loss in both ears (moderate to severe), blindness in his left eye and myopic vision in his right eye. E.S. is fed through a G-tube, although he was able to tolerate small amounts of pureed foods previously. E.S. also has atrial septic defect, paralyzed vocal cord, and paralysis on the right side of his face.

90.    Because of the multitude and complexity of his medical issues, E.S. requires substantial, individualized, and specialized educational services in order to make progress.

91.    Beginning in 2018, Plaintiff S.S. filed the first of her due process complaints alleging the DOE denied E.S. a FAPE.

92.    E.S. began receiving various services through Early Intervention and the Committee on Preschool Special Education ("CPSE").

93.    In the spring of 2016, when E.S. was preparing to turn five years old and enter kindergarten, E.S. was comprehensively evaluated. Pursuant to an August, 2016 IEP, E.S. was admitted to the Lexington School for the Deaf ("Lexington"), a New York state approved non-public school.

94.    While at Lexington, E.S. received various related services, including speech-language, occupational and physical therapies, as well as some feeding therapy and vision education services.

95.    Over the years, however, E.S.'s IEPs failed to include feeding therapy and vision education services, among other things, and the DOE inconsistently implemented the entirety of E.S.'s IEPs and undisputed services.

96.    In the fall of 2019, E.S. was evaluated for applied behavior analysis ("ABA") and the evaluator recommended full-time ABA to address E.S.'s needs. In December, 2019, E.S. underwent a neuropsychological evaluation and the evaluator recommended a highly specialized school with full-time ABA in school, as well as home ABA, parent training, BCBA services, hearing services, including training in American Sign Language ("ASL"), assistive technology, vision education services, speech-language therapy, feeding therapy, a full-time 1:1 nurse at school and on the bus, and special transportation.

**IH Case No. 184016 and the 2019-2020 School Year**

97.    On or about June 28, 2019, S.S., through counsel, filed a due process complaint ("DPC") alleging a denial of FAPE for the 2019-2020 school year. Defendants designated this DPC IH Case No. 184016. The allegations in this DPC are incorporated herein by reference.

98.    The IHO issued a pendency order dated July 19, 2019, ordering the following educational program for E.S., based on the prior hearing decision:

      a.     Placement at Lexington;

      b.     1:1 occupational therapy ("OT") 3x30 per week;

      c.     1:1 physical therapy ("PT") 3x30 per week;

      d.     1:1 speech-language therapy ("SLT") 3x30 and group SLT 2x30 per week;

      e.     1:1 vision education services 2x60 per week;

      f.     5 hours per week of toilet training;

g.    1 hour per month of parent training for toilet training;

h.    1 hour per month of BCBA supervision for parent training;

i.    1:1 feeding therapy 3x60 per week;

j.    An FM unit;

k.    A full-time 1:1 nurse at school and during the bus ride;

l.    Special education transportation; and

m.    An extended 12-month school year for all services.

99.    On or about September or October, 2019, S.S. filed an amended DPC, which is also incorporated herein by reference.

100.    For the 2019-2020 school year, E.S. attended Lexington, although the DOE wanted to change his school placement.

101.    As part of the impartial hearing in IH Case No. 184016, S.S. sought to change his placement to Children's Learning Center ("CLC"), a New York state approved non-public school, at DOE's request. At the hearing, however, the DOE argued that CLC was not substantially similar to Lexington. Confusing, the DOE then reconvened an IEP meeting in January, 2020, supposedly with the purpose of facilitating his placement at CLC. However, the DOE unilaterally changed the service recommendations, based on what CLC could provide, rather than what E.S. needed.

102.    In a Findings of Fact and Decision dated May 25, 2020 ("E.S. 2020 FOFD"), the IHO found in favor of S.S. and E.S. and ordered, *inter alia*, the DOE to reconvene within 15 days to amend his IEP to include the following:

a.    10 hours per week of home ABA;

b.    15 hours per week of school-based ABA, with a provider certified in American Sign Language ("ASL");

c.    2 hours per month of BCBA supervision;

    d.   2 hours per month of parent counseling and training with a BCBA;

    e.   SLT 5x30 per week;

    f.   1:1 vision education services 2x60 per week;

    g.   Placement in a 6:1:2 class, at Lexington, or another appropriate approved NPS;

    h.   Continue the same OT and PT mandates and transportation accommodations;

    i.   1:1 nurse at school and on the bus; and

    j.   Feeding therapy at least twice per week (collectively, E.S.'s "FAPE Services").

103.    In E.S. 2020 Decision, The IHO also ordered some compensatory relief and evaluations.

104.    The Defendants failed to appeal E.S.'s 2020 FOFD in IH Case No. 184016.

105.    The DOE did not, however, implement all elements of E.S.'s pendency and the 2020 FOFD, including but not limited to the DOE's failure to provide vision education services and feeding therapy.

106.    Additionally, E.S. did not receive a significant amount of services from March through June, 2020 due to the Covid pandemic.

**IH Case Nos. 207291 and 209326 and the 2020-2021 and 2021-2022 School Years**

107.    On or about February 11, 2021, S.S., through counsel, filed a DPC alleging a denial of FAPE for the 2020-2021 school year.  Defendants designated this DPC IH Case No. 207291.  The allegations in this DPC are incorporated herein by reference.

108.    On or about June 30, 2021, S.S., through counsel, filed a DPC alleging a denial of FAPE for the 2019-2020 school year.  Defendants designated this DPC IH Case No. 209326.  The allegations in this DPC are incorporated herein by reference.

109.    In October, 2021, the IHO issued two Orders on Pendency in IH Case No. 207291, finding that E.S.'s pendency includes E.S.'s FAPE Services, as delineated in the 2020 FOFD.

110.    In an Order dated November 22, 2021, the IHO denied consolidation of the two cases and they each proceeded separately.

111.    In a Findings of Fact and Decision dated February 3, 2022, the IHO found that the DOE denied E.S. a FAPE for the 2020-2021 school year, ordering *inter alia* E.S.'s new placement at CLC and awarding compensatory banks for the DOE's failure to provide E.S.'s pendency.

112.    In a decision dated February 3, 2022 in IH Case No. 209326, the IHO issued an Order on Pendency, continuing E.S.'s FAPE Services.

113.    In a Findings of Fact and Decision dated July 4, 2022, the IHO awarded S.S. compensatory banks for missed FAPE Services during the 2021-2022 school year.

114.    The Defendants failed to appeal these 2022 FOFDs.

115.    The DOE did not, however, implement all elements of E.S.'s pendency and the 2022 FOFDs, including but not limited to the DOE's failure to provide vision education services and feeding therapy and its failure to calculate S.S.'s compensatory award.

**IH Case No. 227140 and the 2022-2023 School Year**

116.    On or about June 27, 2022, S.S., through counsel, filed a DPC alleging a denial of FAPE for the 2022-2023 school year.  Defendants designated this DPC IH Case No. 227140.  The allegations in this DPC are incorporated herein by reference.

117.    The DOE issued a Pendency Implementation Form dated August 4, 2022, agreeing that E.S.'s pendency was his FAPE Services, including placement at CLC. On or about August 27, 2022, the IHO issued an Order enforcing E.S.'s pendency rights.

118.    In a Findings of Fact and Decision dated August 29, 2023 ("2023 FOFD"), the IHO found that the DOE denied E.S. a FAPE for the 2022-2023 school year and that E.S. was entitled to his full FAPE Services for the entirety of the 2022-2023 school year.

119.    The DOE, however, failed to implement E.S.'s pendency during the 2022-2023 school year, and in particular, but not limited to, E.S.'s vision education services and feeding therapy.

**IH Case No. 249741 and the 2023-2024 School Year**

120.    On or about June 30, 2023, S.S., through counsel, filed a DPC alleging a denial of FAPE for the current 2023-2024 school year.  Defendants designated this DPC IH Case No. 227140.  The allegations in this DPC are incorporated herein by reference.

121.    Although an IEP meeting was held in February, 2023, S.S. never received a copy of any 2023 IEP.  However, upon information and belief, S.S. believes that any 2023 IEP will suffer from the same infirmities as prior IEPs and terminate some of his services without any evaluative justification.

122.    In a decision dated July 31, 2023, the IHO issued an Order on Pendency, continuing E.S.'s FAPE Services as his pendency.

123.    The IHO issued a Second Order on Pendency, dated August 29, 2023, after the 2023 FOFD was issued, continuing E.S.'s FAPE Services as his pendency, because there was no pendency-changing event with the issuance of the 2023 FOFD.

124.    IH Case No. 249741 remains pending and Plaintiff S.S. is attempting to exhaust her administrative remedies.

125.    However, the DOE is not implementing E.S.'s pendency and in particular his vision education services and feeding therapy.

------

126.    While Plaintiff J.Z. and S.S. are attempting to exhaust their administrative remedies under the IDEA with respect to their pending IH cases, Plaintiffs believe these efforts are futile in light of Defendants' repeated failure to comply with orders, to implement pendency, and to provide

related services, and in particular feeding therapy, after-school SLT and OT, and vision education services.

127.    Plaintiffs, however, are not required to exhaust claims for pendency violations.

128.    Plaintiffs are entitled to compensatory education and equitable relief based on the Defendants' failure to implement pendency, the FOFDs, and interim orders throughout the school years at issue.

129.    Plaintiffs are entitled to their reasonable attorneys' fees and costs as the prevailing party in all of the impartial hearing actions alleged herein, plus prejudgment interest.

**Systemic Allegations**

**Remote Learning**

130.    On March 16, 2020, the Governor of the State of New York declared that all schools in the state would be closed. Schools remained closed for in-person learning for the remainder of the 2019-2020 school year.

131.    Defendants have systemically failed to develop legally valid IEPs and remote learning plans that reflect the program and services applicable to full and/or partial remote learning while schools are closed.

132.    Defendants failed to provide an appropriate special education program for A.F. and E.S. during the school closure period and failed to implement their IEPs, pendency, and favorable decisions.

133.    Defendants failed to evaluate A.F. and E.S. to determine whether compensatory education was necessary to remedy any lack of progress caused by the Covid pandemic.

134.    Plaintiffs are entitled to compensatory education and/or other equitable relief to remedy the lack of progress and regression due to the Covid pandemic.

**Defendants Repeatedly Fail to Evaluate A.F., Create IEPs for A.F. and Offer Placements for A.F. in Violation of the IDEA and Section 504**

135.    Defendants repeatedly fail to evaluate A.F. and his educational needs, create IEPs for A.F. to provide a FAPE, and offer any educational placement for A.F.

136.    Upon information and belief, A.F. has not been comprehensively evaluated since 2017, around the time of A.F.'s last IEP that DOE created.

**Defendants Will Not Recommend Services Required for FAPE**

137.    Upon information and belief, even if the DOE created an IEP for A.F., the DOE will not include all services that are part of A.F.'s FAPE program due to illegal policies and practices.

138.    Defendants will not recommend or fund services that constitute the FAPE program and FAPE Services, including 1:1 instruction, ABA, BCBA supervision, feeding therapy, home-based related services, and vision education services.

139.    Defendants refuse to fund services for A.F.'s FAPE program and E.S.'s FAPE Services unless pursuant to orders.

140.    Defendants do not employ staff that are available to deliver the programs and services that constitute these students' FAPE programs and services, including but not limited to providers for ABA, BCBA supervision, home-based services, vision education services, and feeding therapy.

141.    Defendants have not ensured that their menu of service options for children with autism such as A.F. or students like E.S. who otherwise need specialized and individualized services includes the necessary 1:1 instruction, ABA, BCBA supervision, home-based services, vision education services, and feeding therapy, or allows the necessary mandate levels (e.g. 5x60 per week).

142.    Upon information and belief, if Defendants create an IEP for A.F., Defendants will apply illegal blanket policies and practices with respect to the development of his IEPs and will not make

decisions based upon their individual needs. Defendants have applied illegal blanket policies and practices with respect to E.S.'s IEPs, including termination of services without evaluative justification, because the NPS is limited in the services it offers.

143.    The only way for Plaintiffs J.Z. and S.S. to maintain their child's FAPE program and services is to engage in litigation.

**Defendants have Subjected Plaintiffs to Systemic Practices**

144.    The DOE is not permitted to recommend any after-school special education services, 1:1 instruction, ABA, BCBA supervision or individual parent counseling and training (collectively, "Autism Services") on IEPs. Upon information and belief, the DOE will not recommend feeding therapy on IEPs.

145.    Under Defendants' policies and practices, the DOE will not recommend Autism Services and feeding therapy on IEPs absent an impartial hearing order or settlement obtained via litigation.

146.    J.Z. and S.S. hav been subject to these policies and practices for several years.

147.    These policies and practices violate the IDEA and Section 504.

148.    There is no remedy through the administrative process to address the systemic claims raised here, as IHOs do not have authority to order the Defendants to refrain from applying policies and practices to J.Z. and S.S.

149.    Even when IHOs attempt to remedy the systemic problem, such including a specific provision directing the DOE to find and/or provide services, Defendants fail to comply.

150.    Despite the documented need for 1:1 instruction and feeding therapy, Defendants have never offered, and will never recommend, 1:1 instruction and feeding therapy for A.F. or E.S.

151.    Moreover, the DOE does not ensure that there is access to the least restrictive environment ("LRE") and community engagement for children who receive special education services.

152.    The law permits parents to receive funding for educational service providers who do not meet state credentials or approval as a remedy for a denial of a FAPE.

153.    J.Z. and S.S. should be able to receive funding for alternative or substantially similar services as part of their child's stay-put placement, if necessary.

**Systemic Shortages of Providers**

154.    Defendants are aware that there are shortages of providers for ABA and other services, including feeding therapy, particularly in the Bronx.

155.    Defendants have failed to ensure that there are sufficient providers who will provide mandated FAPE services to DOE students like A.F. and E.S., and particularly those like A.F. who live in underserved areas such as the Bronx.

156.    In addition, Defendants' rates and payment procedures, including timeliness of payments, are insufficient to ensure access to related service providers.

**Plaintiffs are Entitled to Compensatory Education for Pendency Violations**

157.    A.F. and E.S. were and remain entitled to continue their FAPE program and services but Defendants are failing to implement all aspects of their pendency programs.  As discussed in this complaint, Defendants do not employ staff to provide all of their pendency services/FAPE program and in particular feeding therapy, vision education services, or any home-based services, and instead foist the responsibility of implementing pendency on parents by forcing them to locate their own private providers.

158.    Moreover, parents should not be obligated to "assume the risk" in finding private providers for services that the DOE does not and cannot offer itself.

159.    Plaintiffs are entitled to compensatory education and additional equitable relief based on the Defendants' failure to implement the pendency throughout the school years at issue.

160.    Further, DOE will continue to be unable to implement A.F.'s and E.S.'s pendency placements, absent relief from the Court.

161.    Further, Defendants failed, and continue to fail, to timely authorize and pay private providers that are implementing pendency, jeopardizing and risking the ability of those providers to start timely and/or to continue to deliver the services.

162.    No exhaustion is required for pendency violations.

**Defendants Practice of Terminating Funding for Student's Last Agreed upon Services Even When They Fail to Offer an IEP or Placement Violates the IDEA**

163.    Plaintiffs have multiple favorable orders establishing A.F.'s and E.S.'s pendency and their FAPE programs and services.

164.    Defendants regularly fail to issue IEPs by the beginning of the school year to students like A.F., students who do not attend DOE schools pursuant to prior favorable decisions by hearing officers.

165.    Yet, upon information and belief, under Defendants' policies, they terminate the funding for the last agreed-upon placement that the student had, forcing the parents to retain counsel and file yet another hearing to continue a student's pendency program.

166.    Then, in the hearing, after the parents were forced into litigation, the Defendants do not defend their actions and yet, these actions result in the loss of special education services that are, in any event, part of the student's stay-put placement.

167.    Defendants have consistently terminated funding for A.F.'s and E.S.'s services, which, as a result, causes Plaintiffs to engage in a constant state of litigation to maintain their programs and services.

**Defendants Do Not Have Feeding Therapy**

168.    Feeding Therapy is a related service that should be offered to eligible school-age children under the IDEA if those services are required for a FAPE.  Upon information and belief, other school districts in New York offer feeding therapy.

169.    Defendants operate a limited menu of services for children with IEPs that does not include feeding therapy.

170.    Every parent of any child who needs an off-menu service, like feeding therapy, must file for due process in order to obtain feeding therapy.

**Defendants have Subjected Plaintiffs to Systemic Practices Concerning Pendency**

171.    Defendants have failed to implement policies, procedures, or resources to ensure timely implementation of pendency for children whose parents file DPCs in New York City.

172.    While the problems with implementation of pendency worsened during the Covid pandemic, the Defendants' failures in this regard long-predated the pandemic.

173.    Although pendency rights are supposed to be automatic, under Defendants' policies, procedures and practices, Defendants do not implement a student's pendency placement upon the filing of a DPC.

174.    Until the 2019-2020 school year, Defendants refused to implement pendency unless an impartial hearing officer ("IHO") issued a "pendency order," even when the substance of a student's pendency placement was not in dispute.

175.    A pendency order is a written interim order issued by a hearing officer which directs Defendants to provide and/or fund the pendency services that a child is supposed to receive.

176.    In May 2019, the New York State Education Department ("NYSED") issued the New York City Department of Education Compliance Assurance Plan ("Compliance Plan"), which found Defendants out of compliance with its obligation to ensure a functioning due process system.  State

Defendants found that it was improper for Defendants to require hearings and decisions for pendency "even when a student's pendency is not in dispute, unnecessarily adding to the number of due process complaints filed."

177.    To address pendency for the 2020-2021 school year, the Defendants changed their policies and procedures. Pursuant to the new procedures, uncontested pendency services were not implemented until such time as the parent (or parent representatives) and the DOE execute a "Pendency Agreement."

178.    Defendants conditioned implementation of uncontested pendency upon the parent or his or her representative filling out a "Pendency Agreement Form" which lists the services and the basis for pendency.

179.    In or about the start of the 2022-2023 school year, Defendants changed their pendency forms and procedures again. Rather than a co-signed agreement, the new form contemplates that the DOE's lawyers unilaterally fill out and process a "Pendency Document" without agreement by the parent or parent's counsel, when the DOE's lawyers decide that pendency is "uncontested."

180.    Further, upon information and belief, the DOE has procedures and instructions for their staff concerning pendency implementation and pendency documents, which the DOE never made public or shared with parents or their counsel.

181.    Further, there is a systemic delay in the time between when a DPC is filed and the date on which the DOE's lawyers execute the Pendency Document.

182.    Moreover, after the DOE's lawyers unilaterally execute the Pendency Document, they send it to the DOE's Impartial Hearing Office Implementation Unit" ("IHOIU"). The DOE started to use the IHOIU for purposes of implementing these Pendency "Agreements" and Documents, despite the fact that the Pendency Documents are not orders.

183.    Until the IHOIU was made responsible for implementing Pendency Agreement Forms and Pendency Documents, the IHOIU's sole responsibility was to implement impartial hearing orders, include pendency orders, issued by impartial hearing officers.

184.    The IHOIU is the subject of a long-standing class action due to the DOE's failures to timely implement interim, pendency and final orders of IHOs.

185.    Defendants have historically failed to ensure that the IHOIU has sufficient staff to handle the volume of complaints, and there are delays, ranging from days, weeks and even more than one month, before DPCs are processed and assigned a case number.

186.    The IHOIU has historically been significantly understaffed and not provided adequate funding and resources prior to the Pandemic to implement the growing number of orders.   The Pandemic has not helped this situation.

187.    The IHOIU has not made the procedures for processing the Pendency Agreements public and thus it is not clear what is involved.

188.    According to what appear to be unwritten procedures, the IHOIU's obligation to implement the Pendency Agreement Form is not triggered until such time as the form is "processed," uploaded into the IHOIU system and issued as a "decision."

189.    With respect to pendency, the DOE will either (a) reimburse a parent; (b) directly pay a provider; or (c) directly provide the services with a private provider/contract provider.

190.    The IHOIU's primary function appears to be approving and processing payments for private providers.

191.    Defendants rely heavily on private, independent providers to implement pendency.

192.    Defendants have their own system of private providers which they fund both through Contract Agencies, as well as through vouchers, called Related Service Authorizations ("RSAs") or P-4s (for SETSS services).

193.    The DOE's Standard Operating Procedures Manual for Special Education provides that contract agencies - i.e. "private providers" - are used for both assessments and fulfilling IEP mandates.  If a "contract agency" is not available, the DOE will issue an RSA or P-4.

194.    In addition, historically, under the L.V. Class Action, if the DOE is ordered to provide a service that is in a shortage area or if the order is impossible to implement, the DOE may arrange for an alternative service.

195.    Historically, and until the DOE changes the policy and procedure unilaterally in approximately 2022, the DOE would agree to authorize a direct payment to a private provider when the DOE could not implement the order.

196.    In general, the DOE has done nothing when it cannot implement an order, leaving the parents to assume responsibility for trying to implement their own pendency by locating providers, taking on debts or leaving their children without services when unable to find their own providers.

197.    While some private providers of pendency services will agree to implement services before the above process unfolds, many providers will not agree to do so and require the pendency order and approval from the IHOIU, or a voucher from the DOE before commencing services.

198.    The delays in this process leave families who cannot afford to pay for pendency and/or for whom funding pendency is a hardship in an untenable situation.

199.    Further, due to the DOE's extensive payment delays, it is difficult to find a private provider to plug the gap in services, when a parent has a Pendency Document.

200.    Before a private provider is funded directly through IHOIU, the Parent must contact the IHOIU and request an authorization, providing, among other things, a specific list of the provider's tax information, rates, number of hours.

201.     The IHOIU will review the information, and, at some point, issue an "approval" to the provider by email, after which time the provider can directly bill the DOE through the IHIU using specific forms required by DOE.

202.     Even when the above procedures have been followed, when providers submit invoices for payment for services rendered, IHOIU has extensive, months-long delays in processing the invoices and issuing payment to providers.   This delay in payment often causes providers to terminate services.

203.     Further, the IHOIU will never pay in advance for services.

204.     While some providers accept vouchers, many providers have determined that they will no longer accept vouchers due to payment delays and the fact that the voucher rates have not been increased for more than twenty years and are substantially below market rates.

205.     Further, while many parents will agree to accept vouchers, the DOE's issuance of vouchers alone does not fulfill its obligation for implementing pendency.

**The Statute of Limitations Does Not Bar Any of Plaintiff's Claims**

206.     Governor Andrew Cuomo tolled the statute of limitations for all New York statutes as a result of the COVID pandemic.

207.     Executive Order 202.08 dated March 20, 2020, provided that any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby tolled from the date of this executive order.

208.     Multiple Executive Orders continued the suspensions and modifications of law through November 3, 2020, ultimately tolling the statute of limitations for a total of 228 days.

209.     Courts adopt the three-year statute of limitations in N.Y. Civ. P.L. § 214(2) for IDEA

attorney's fees claims, as the IDEA does not include a limitations period for filing such claims. *Robert D. v. Sobel*, 688 F. Supp. 861 (S.D.N.Y. 1988).

210.    As federal Courts adopt state limitations periods, New York State tolling rules apply. *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478 (1980).

211.    Accordingly, the applicable statute of limitations in New York relating to attorney's fees and all other claims were tolled by the New York State Governor.

**Attorneys' Fees**

212.    Plaintiffs are the prevailing party in all of the underlying due process hearings referenced herein and are entitled to an award of attorneys' fees for work performed in connection with these cases, implementation and this action, plus prejudgment interest.

213.    The fees and costs charged by Plaintiffs' counsel are consistent with market rates for the legal services performed, in light of counsels' experience and expertise and the complexity of the issues.

<u>**CAUSES OF ACTION**</u>

FIRST CAUSE OF ACTION
SECTION 504 OF THE REHABILITATION ACT

214.    Plaintiff repeats and re-allege the allegations of all the above paragraphs as if fully set forth herein.

215.    Defendants' conduct is knowing, intentional, reckless, and gross.

216.    A.F. and E.S. are qualified individuals with a disability entitled to protection under Section 504.

217.    Defendants discriminated against A.F. and E.S. under Section 504 by, *inter alia*, denying them reasonable accommodations, adopting systemic policies, procedures and practices that

violate their rights under the IDEA and New York State law, and engaging in widespread and pervasive violations of the IDEA and New York State Education law.

218.    Defendants discriminated against A.F. and E.S. under Section 504 by, *inter alia*, committing extensive, repeated, gross, knowing and reckless violations of multiple provisions of the IDEA and New York State law.  Defendants also discriminated against A.F. and E.S. under Section 504 by repeatedly failing to implement pendency and final orders and repeatedly failing to offer A.F. and E.S. a FAPE for the school years alleged herein.

SECOND CAUSE OF ACTION
THE IDEA

219.    Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

220.    Defendants did not offer A.F. and E.S. a FAPE for the school years alleged herein.

221.    Plaintiffs have exhausted the administrative procedures for each of the school years alleged herein, as required by the IDEA.

222.    For all school years at issue, IHOs have found that the Defendants failed to provide A.F. and E.S. a FAPE for each of the school years at issue in this complaint.

223.    Defendants' application of blanket policies and practices repeatedly denies A.F. and E.S. a FAPE and violates the IDEA.

224.    Defendants have repeatedly failed to implement A.F.'s and E.S.'s stay-put rights under the IDEA.

225.    Defendants have failed to implement fully the final decisions of the IHOs for the school years at issue.

226.    Defendants engaged in systemic predetermination by refusing to individualize IEPs for A.F. and E.S. and to offer services that should be available under the IDEA.

227.    Defendants denied Plaintiffs their due process rights under the IDEA.

### THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983

228.    Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

229.    Defendants have violated 42 U.S.C. §1983 by depriving Plaintiffs, under color of state law, of their rights, privileges, and immunities under federal statutory and constitutional law.

230.    By implementing, promulgating, and continuing to enforce and/or effectuate policies, practices, and customs as alleged herein, Defendants have denied A.F. and E.S. the educational services to which they are entitled under the IDEA and New York law, in violation of 42 U.S.C. § 1983.

231.    By failing to supervise and train their employees and agents concerning the federal and state laws and policies concerning general and special education services, Defendants have violated 42 U.S.C. § 1983.

232.    By failing to ensure that the pendency orders, decisions, and FOFDs were implemented, Defendants violated 42 U.S.C. § 1983.

233.    The Defendants violated Plaintiff's rights under 42 U.S.C. § 1983 by failing to have adequate policies, procedures, protocols, and training to ensure that the provisions of the IDEA and Section 504 referenced herein were complied with, which deprived A.F. and E.S. of their right to a free and appropriate education under federal and state law.

234.    Under color of state law, the Defendants deprived A.F. and E.S. of their right to educational services afforded to them under New York State law, in violation of the Fourteenth Amendment of the U.S. Constitution.

235.    As a direct and proximate result of the Defendants' misconduct, A.F. and E.S. have suffered and will continue to suffer harm, unless Defendants are enjoined from their unlawful conduct.

FOURTH CLAIM
THE ADA

236.    Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

237.    The ADA, like Section 504, prohibits discrimination based on disability.

238.    A.F. and E.S. is a qualified individual with a disability entitled to protection under the ADA.

239.    Defendants discriminated against A.F. and E.S. because of their disabilities by, *inter alia*, denying them reasonable accommodations, adopting systemic policies, procedures and practices that violate their rights under the IDEA and New York State law, including the failure to offer, recommend, and provide feeding therapy, ABA and home-based services, and engaging in widespread and pervasive violations of the IDEA and New York State Education law.

240.    Defendants discriminated against A.F. and E.S. by, *inter alia*, committing extensive, repeated, gross, knowing and reckless violations of multiple provisions of the IDEA and New York State law.  Defendants also discriminated against A.F. and E.S. by repeatedly failing to implement pendency and final orders and repeatedly failing to offer A.F. and E.S. a FAPE for several school years.

241.    Defendants' actions (and inactions) discriminated against A.F. and E.S. on the basis of their disabilities when they failed to make individualized determinations of their needs and recommendations.

242.    As a result of Defendants' actions, A.F. and E.S. have suffered, and will continue to suffer, harm.

CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court:

i.    Assume jurisdiction over this action;

ii.    Issue a declaratory judgment that Defendants have violated Plaintiffs' rights as alleged herein;

ii.    Issue a preliminary and permanent injunction directing Defendants to immediately implement A.F.'s and E.S.'s stay-put rights and pendency program and services;

iii.    Issue a preliminary and permanent injunction (a) directing Defendants to implement the decisions; (b) ordering compensatory education and additional equitable relief for the violations alleged herein; and (c) placing funds in escrow sufficient to ensure that there are staff available to implement any services ordered.

iv.    Issue a final Order and Judgment in favor of Plaintiffs that includes:

a.    Equitable relief and compensatory education for the Defendants' failure to implement pendency;

b.    Equitable relief and compensatory education to place A.F. and E.S. in the position that they would have been in had they not suffered the FAPE deprivations alleged herein under the IDEA and Section 504;

c.    Equitable, injunctive and other relief for Defendants' violations of the ADA;

d.    Establishment of a compensatory education trust, if necessary, for purposes of funding the compensatory education services; and

e.      Awarding Plaintiffs costs and attorneys' fees for the underlying administrative hearings;

v.      Award Plaintiffs reasonable attorneys' fees and costs, plus prejudgment interest, incurred in connection with this action; and

vi.      Award such other, and further, relief as to the Court may deem just and proper.

Dated:      November 3, 2023
          New York, New York

          Respectfully submitted,
          THE LAW OFFICE OF ELISA HYMAN, P.C.

          By _____
          Erin O'Connor, Esq., Of Counsel
          The Law Office of Elisa Hyman, P.C.
          1115 Broadway, 12th Floor
          New York, NY 10010
          Phone: (646) 572-9075
          Fax: (646) 572-9055
          eoconnor@specialedlawyer.com