UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| J.Z., et al.,<br><br>                              Plaintiffs,<br><br>                    v.<br><br>NEW YORK CITY DEPARTMENT OF<br>EDUCATION, et al.,<br><br>                              Defendants. | 23 Civ. 9779 (DEH)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

Plaintiffs J.Z. and S.S., on behalf of themselves and their sons, A.F. and E.S.,

respectively (collectively, "Plaintiffs"), file this motion for preliminary injunction against the

New York City Department of Education ("DOE" or "the DOE"); the Board of Education of the

City School District of the City of New York; Chancellor David Banks, in his official capacity;

and the City of New York (collectively, "Defendants").  As explained in detail below, Plaintiffs'

motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Plaintiff A.F. is a 17-year-old boy with autism who exhibits significant developmental

delays, engages in maladaptive behaviors, and requires substantial educational support.  *See*

Compl. ¶¶ 38-42, ECF No. 1; J.Z. Decl. ¶ 33, ECF No. 20-1.  Plaintiff E.S. is a 12-year-old boy

with CHARGE syndrome, a genetic disorder that causes multiple health complications, including

difficulty breathing, hearing, and seeing, as well as heart defects, developmental abnormalities,

and facial paralysis.  *See* S.S. Decl. ¶¶ 5, 8, ECF No. 20-2.  Defendants are required by law to

provide A.F. and E.S. with a "free appropriate public education" ("FAPE"), i.e., an education

that (1) complies with the procedural requirements set forth in the Individuals with Disabilities

Education Improvement Act ("IDEA") and (2) "include[s] an appropriate . . . secondary school

education in the State involved," provided in conformity with a child's individualized education program ("IEP").  *See* 20 U.S.C. §§ 1401(9), 1412(a)(1), 1414(d)(2)(A); 8 N.Y. Comp. R. & Regs. tit. 8, § 200.4(e)(2)(ii); *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206-07 (1982); *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005).

Before the Court is Plaintiffs' request that "the Court issue a preliminary injunction directing Defendants to effectuate A.F.'s and E.S.'s stay-put rights under the IDEA and implement immediately the Students' stay-put pendency services which are not otherwise being provided."  Pls.' Mem. of Law in Supp. of Mot. for Prelim. Inj. ("Pls.' Mot.") 18, ECF No. 19.

## A. Administrative Proceedings

Under the IDEA, a parent may file a due process complaint requesting an impartial hearing "with respect to any matter relating to the identification, evaluation, or educational placement of [a] child" or the provision of a FAPE to a child.  20 U.S.C. § 1415(b)(6)(A).  In New York, such a hearing is presided over by an officer appointed by the New York Board of Education.  *See Mackey ex rel. Thomas M. v. Bd. of Educ.*, 386 F.3d 158, 160 (2d Cir.), *supplemented sub nom. Mackey v. Bd. of Educ.*, 112 F. App'x 89 (2d Cir. 2004).  Once the parent files a due process claim, the student is automatically entitled to continue in his "stay-put" educational program (also called "pendency" or "pendency placement") throughout the pendency of the proceedings.  *See* 20 U.S.C. § 1415(j).  "Any party aggrieved by the findings and decision made" by an impartial hearing officer may bring a civil action in a district court, without regard to the amount in controversy.  *Id*. § 1415(i)(2)(A).

Alleging that for at least the past six years, the DOE has failed to provide A.F. and E.S. with a FAPE, J.Z. and S.S. have filed due process claims on behalf of their children, and they have repeatedly prevailed against Defendants at impartial hearings.  *See* Compl. ¶¶ 3, 56-88, 91.

As relevant here, hearing officers presiding over these proceedings have determined that A.F. is entitled to receive funding for and/or the direct provision of services that include speech-language therapy, occupational therapy, and feeding therapy; and that the DOE is required to provide E.S. with vision education services and feeding therapy. *See* Impartial Hr'g Final Decision Case No. 183806, ECF No. 20-3 (A.F.); Impartial Hr'g Final Decision Case No. 209251, ECF No. 20-4 (A.F.); Impartial Hr'g Order on Pendency Case No. 244877, ECF No. 20-5 (A.F.); Impartial Hr'g Final Decision Case No. 244877, ECF No. 20-9 (A.F.); Impartial Hr'g Order on Pendency Case No. 249741, ECF No. 20-10 (E.S.); Impartial Hr'g Second Order on Pendency Case No. 249741, ECF No. 20-11 (E.S.).

The following administrative proceedings are of particular relevance here:

On August 29, 2023, the impartial hearing officer presiding over E.S.'s case ordered the DOE to "continue to provide the services that had defined pendency in #227140." Impartial Hr'g Second Order on Pendency Case No. 249741 at 3. The services defined as pendency in the Order from Case No. 227140, dated August 4, 2022, included: (1) vision education services and (2) feeding therapy, each for 60-minute sessions twice a week. *See* Pendency Implementation Form Case No. 227140 at 2, ECF No. 20-12.

On September 27, 2023, the impartial hearing officer presiding over A.F.'s case ordered the DOE[1] to fund or, upon the request of his parent, "find and/or provide . . . within fifteen days of the [parent's] request" services that include: (1) speech-language therapy, (2) occupational therapy, and (3) feeding therapy services, each for 60-minute sessions, five times a week. *See* Impartial Hr'g Order on Pendency Case No. 244877 at 5. The following day, on September 28,

---

[1] The pendency order uses "the District" and "the DOE" interchangeably. The Court shall refer to the DOE as the responsible party involved.

2023, Plaintiffs' counsel emailed Defendants stating that "the Parent [of A.F.] is writing to request that the Implementation Unit identify available providers to implement" occupational therapy, speech-language therapy, and feeding therapy services, each for 60-minute sessions, five times a week. Sept. 28, 2023 Email, ECF No. 20-6.

J.Z. and S.S. have submitted declarations attesting that, despite these decisions, their children have received none of the services mandated by the hearing order decisions. *See* J.Z. Decl. ¶ 23; S.S. Decl. ¶¶ 23, 27.

### B. Plaintiffs' Efforts to Secure Service Providers

The uncontested record reflects that J.Z. and S.S. have searched for service providers for their children for years. J.Z. briefly secured feeding therapy for A.F. from a private school, but those services ended in 2019, and J.Z. has since found that "[m]any agencies don't have providers who will come to the Bronx [where J.Z. and A.F. live]." J.Z. Decl. ¶¶ 16-17, 20. J.Z. attests that "[m]any agencies do not take DOE payment but want private insurance, which [J.Z. does not] have." *Id*. J.Z. has "not found hospital programs that will accept A.F.'s case," or she has found programs that "only provide a few sessions [of feeding therapy] and are unable to help further because [A.F.] needs intensive therapy (more than once a week)." *Id*. Though J.Z. briefly secured occupational therapy services for A.F. from an agency called Turner Services, those services ended in May 2023. *Id.* ¶ 24. J.Z. has also "contacted many agencies [about speech therapy for A.F.] and provided [the agencies] with requested documents but then they do not follow through and provide any services." *Id.* ¶ 26. As these efforts proved fruitless, J.Z. sought the assistance of the DOE to identify and secure service providers for A.F., but as of the filing of the motion for preliminary injunction, had not received such assistance. *See id.* ¶ 35 ("In late September, 2023, my attorney Ms. Sara Frankel, contacted the DOE requesting that it

implement pendency and provide A.F.'s mandated services, and in particular his feeding, speech-language and occupational therapies[.]").

S.S. asked a local hospital "about providing ongoing feeding therapy [for E.S.] but was told that they have a long waiting list."  S.S. Decl. ¶ 20.  Similarly, S.S.'s "case manager has not found any [feeding] therapy for E.S."  *Id*.  Like J.Z., S.S. also contacted the DOE for assistance in securing providers, but to no avail.  *See id.* ¶ 21 ("Through counsel (The Law Office of Elisa Hyman, P.C.), I have asked the DOE to provide feeding therapy to E.S. but have never received any response").

C.  **District Court Proceedings**

On November 5, 2023, Plaintiffs filed suit in this Court, *see* Compl., and on March 18, 2024, Plaintiffs filed their motion for preliminary injunction, *see* Pls.' Mot.  On April 10, 2024, after briefing was complete and one day before the parties were scheduled to appear before the Court for a hearing, counsel for the Defendants filed a letter on ECF representing that Defendants had "located a Speech and Feeding Therapy provider" for A.F. and had reached out to A.F.'s parent to "discuss a schedule for the provision of services."  Apr. 10, 2024 Letter 1, ECF No. 28.  The letter did not address the status of A.F.'s occupational therapy services.  *See id*.  As to E.S., Defendants' counsel represented that "Defendants are willing to work with Plaintiffs' counsel to address the student's feeding needs, including working with the parent to find a provider in addition to funding the service."  *Id*.  The letter further noted that "[t]he DOE is continuing to work on implementing E.S.'s vision education services."  *Id.*

On April 11, 2024, the parties appeared before the Court for oral argument on Plaintiffs' motion for preliminary injunction.  During the hearing, Plaintiffs' counsel represented that between September 28, 2023—i.e., when A.F.'s right to the direct provision of services by the

DOE was triggered—and March 18, 2024—i.e., when Plaintiffs filed their motion for preliminary injunction, Plaintiffs repeatedly communicated with the DOE, seeking updates regarding provision of the mandatory services, but received no substantive response. Defendants' counsel represented that administrative delays in securing third-party service providers were, in part, logistical, requiring coordination between multiple individuals.

### D. Post-Hearing Letters

On April 17 and 18, 2024, Defendants filed supplemental letters on the status of service implementation.  As to A.F., Defendants represented that (1) a speech-language therapy provider will provide A.F. with "1:1 [speech-language therapy] (5x60x1) . . . begin[ning] on April 22, 2024," *see* Apr. 18, 2024 Letter 1, ECF No. 31; (2) an occupational therapy provider "has been located and is available to begin providing [5x60 occupational therapy] services immediately . . . once the speech/feeding therapy has begun," Apr. 17, 2024 Letter 1, ECF No. 29; and (3) the speech-language therapy provider will also provide A.F. with "2:1 feeding therapy (5x60x2)" beginning on "April 22, 2024, at the parent's request."  Apr. 18, 2024 Letter 1.  The DOE did not address whether it would provide 1:1 feeding therapy to A.F. (as required by the Impartial Hearing Orders in A.F.'s case).  *See generally* Apr. 17, 2024 & Apr. 18, 2024 Letters.  And, as discussed further below, notwithstanding Defendants' assurances, services did not begin on April 22, 2024.  *See* Apr. 24, 2024 Letter 1, ECF No. 33.

As to E.S., Defendants represented that (1) the Committee on Special Education "drafted a new IEP which now includes feeding therapy 2x30x1 with a start date of April 25, 2024," with a prospective provider "identified," Apr. 17, 2024 Letter 2, and that (2) "[a] provider for the vision education services . . . has not yet been found," *id.*

On April 18, 2024, Plaintiffs filed a response, arguing that "[f]or too long, the DOE has ignored its obligation to provide [A.F.'s and E.S.'s] pendency services and it cannot escape the

imposition of an injunction at the eleventh hour by stating (with hearsay) that it is trying [to

implement the pendency orders]."  Apr. 18, 2024 Resp. Letter 1, ECF No. 32.  As to E.S.,

Plaintiffs noted as follows:

> [1] E.S.'s pendency feeding therapy mandate is 2 *60-minute* sessions per week, not
> the 30-minute sessions that the DOE is now proposing out of convenience and due
> to the availability of any feeding therapist.  Upon information and belief, the DOE
> intends to have E.S.'s school implement his feeding therapy, and the school speech
> therapist cannot provide more than 2 30-minute sessions of feeding therapy per
> week.  This is insufficient to meet his pendency mandate, and the DOE must
> supplement this with at least 1 60-minute session of feeding therapy at home, if the
> school implements 2 30-minute sessions . . . . [2] With respect to his vision
> education services, S.S. recently received a phone call from E.S.'s prior vision
> therapist (from 2019) who indicated that he is available to resume vision education
> services with E.S.  Despite Defendants' contention that it is "challenging" to find
> providers and requires the involvement of dozens of DOE employees, it seems that
> a vision therapist has been located with a simple phone call to his prior provider.
> However, administrative details still need to be worked out and it is unknown if and
> when this provider may provide services.

*Id.* at 2-3.

With respect to A.F., Plaintiffs' letter stated that A.F.'s parent, J.Z., "has no knowledge

of any anticipated start date and provider for A.F.'s [occupational therapy services.]"  *Id.* at 2.

Plaintiffs did not dispute Defendants' representation that A.F.'s speech-language therapy is

scheduled to begin on April 22, 2024.  *See generally id*.  Finally, Plaintiffs urged that a

preliminary injunction "will ensure consistent and ongoing enforcement of the Students' services,

particularly if the proposed providers do not ultimately work out."  *Id.* at 3.

On April 25, 2024, the parties jointly filed a letter requesting a 30-day stay of pending

deadlines to "continue to focus on the urgent issue of the provision of services."  Apr. 25, 2024

Letter 1.  As relevant here, Plaintiffs added the following update regarding the students' services:

> A.F.'s speech and feeding therapy did not begin on April 22, 2024 because the
> therapist cancelled because she was sick. The therapist will now begin May 1, 2024
> when schools resume after the break. As of today's date, A.F. and E.S. are still not

receiving their stay-put pendency feeding therapy, speech therapy, occupational therapy or vision education services, as applicable to each student.

*Id*.  The Court granted the parties' request the following day.  *See* Order, ECF No. 34.

## LEGAL STANDARDS

A preliminary injunction "is one of the most drastic tools in the arsenal of judicial remedies," *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007), that "should not be granted unless the movant, by a clear showing, carries the burden of persuasion," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  "To obtain a preliminary injunction[,] a party must demonstrate: (1) that it will be irreparably harmed if an injunction is not granted, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of the hardships tipping decidedly in its favor." *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 348-49 (2d Cir. 2003).[2] The movant is held to "a heightened standard where: (i) an injunction is mandatory, or (ii) the injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015).  Under the heightened standard, "the movant must show a clear or substantial likelihood of success on the merits, and make a strong showing of irreparable harm, in addition to showing that the preliminary injunction is in the public interest." *Id*.[3]

---

[2] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses unless otherwise indicated.

[3] In their briefs, Plaintiffs contend that under the IDEA, they need not satisfy the traditional standard for issuance of injunction, because Plaintiffs' pendency rights are automatically enforceable upon filing a due process complaint.  *See* Pls.' Mot. at 5-8.  Because the Court concludes that Plaintiffs satisfy the more onerous traditional standard for a preliminary injunction seeking mandatory relief, the Court does not address this argument.

**DISCUSSION**

For the reasons discussed below, the Court grants Plaintiffs' motion for preliminary injunction in part, ordering all relief requested with two exceptions explained below.  The Court need not decide whether the heightened preliminary injunction standard for mandatory relief applies here because Plaintiffs have demonstrated their entitlement to relief under either standard.

## A.  Likelihood of Success on the Merits

Plaintiffs have demonstrated a substantial likelihood of success on the merits of their claims that Defendants are required to provide E.S. with: (1) 1:1 vision education services and (2) 1:1 feeding therapy in 60-minute sessions twice per week, *see* Pendency Implementation Form Case No. 227140 at 2; and to provide A.F. with: (1) 1:1 speech-language therapy,[4] (2) 1:1 occupational therapy, and (3) 1:1 feeding therapy services in 60-minute sessions five times per week, *see* Impartial Hr'g Order on Pendency Case No. 244877 at 5.

Defendants have not appealed the hearing decisions mandating these services, but nevertheless have failed to provide them (with the very recent exception of speech-language therapy for A.F.).  And in opposing Plaintiffs' motion for preliminary relief, Defendants do not dispute that A.F. and E.S. are legally entitled to receive these services under the IDEA, arguing only that the DOE was merely required to fund, but not directly provide, them.  *See* Defs.' Mem. of Law in Opp'n to Mot. for Prelim. Inj. ("Defs.' Opp'n") 3, ECF No. 23-1.  But that is incorrect (with one exception explained below).  The record reflects that since at least August 29, 2023,

---

[4] However, as discussed below, the Court does not order preliminary relief with respect to 1:1 speech-language therapy for A.F., as emergency relief with respect to that service appears unnecessary in light of its scheduled commencement on May 1, 2024.  *See infra*.

and September 28, 2023, the DOE has been obligated to *provide* the relevant services to E.S. and

A.F., respectively.

With respect to E.S., on August 29, 2023, the impartial hearing officer presiding over

E.S.'s case ordered the DOE to "continue *to provide* the services that had defined pendency" in a

prior order, which included vision education services and feeding therapy. *See* Impartial Hr'g

Second Order on Pendency Case No. 249741 at 3 (emphasis added); *see also* Pendency

Implementation Form Case No. 227140 at 2. It notably did not, as Defendants suggest, state that

the DOE was required only to "fund" the ordered services. Thus, E.S. is entitled to the provision

of 1:1 vision education services and 1:1 feeding therapy in 60-minute sessions twice per week.

In one of their post-hearing letters, Defendants claim that the services to which E.S. is

entitled have recently changed, stating that the Committee on Special Education had "drafted a

new IEP which now includes feeding therapy 2x30x1 with a start date of April 25, 2024" for E.S.

*See* Apr. 17, 2024 Letter 2. But Defendants fail to establish how a proposed draft of a new IEP

for E.S. is of any relevance here. The purpose of the stay-put pendency provision is "to maintain

the educational status quo while the parties' dispute is being resolved." *T.M. ex rel. A.M. v.

Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014). It would defeat the purpose of this

provision to permit Defendants to simply draft a new IEP and adhere to it instead of to a

student's pendency placement. To the extent that Defendants seek to change not only E.S.'s IEP,

but also his pendency, they are expressly prohibited from doing so. E.S.'s parent, S.S.,

represents that she "has not agreed and is not agreeing to change either [E.S.'s] pendency or IEP

feeding therapy mandate from 2 60-minute sessions per week," Apr. 18, 2024 Resp. Letter 3, and

Defendants may not unilaterally alter E.S.'s pendency absent S.S.'s consent. *Ventura de Paulino

v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 536 (2d Cir. 2020) (stating that "the stay-put provision

prevents a school district from modifying a student's pendency placement without the parents'

consent"). Accordingly, on the record before the Court, Plaintiffs have established that E.S. is

substantially likely to prevail on his claim that he is entitled to feeding therapy in 60-minute, not

30-minute, sessions twice per week. *See* Pendency Implementation Form Case No. 227140 at 2.

Turning next to A.F., on September 27, 2023, the impartial hearing officer presiding over

A.F.'s case ordered the DOE to fund A.F.'s services or, upon the request of his parent, "*find*

*and/*or *provide the services directly* . . . within fifteen days of the request." Impartial Hr'g Order

on Pendency Case No. 244877 at 5 (emphasis added). On the following day, September 28,

2023, Plaintiffs' counsel emailed Defendants requesting the direct provision of the relevant

services. *See* Sept. 28, 2023 Email. As counsel for Defendants conceded at the April 11, 2024

hearing, that request triggered the DOE's obligation to provide A.F.'s services directly. Thus,

Plaintiffs have established a substantial likelihood that A.F. is entitled to receive the direct

provision of (1) 1:1 speech-language therapy, (2) 1:1 occupational therapy, and (3) 1:1 feeding

therapy services, in 60-minute sessions five times per week.

By failing to implement the orders of the impartial hearing officers presiding over A.F.'s

and E.S.'s claims, Defendants "have failed to comply with the IDEA's mandate that the state

provide a free and appropriate public education to [A.F. and E.S.]. As a result, [A.F. and E.S.

are] not receiving the meaningful benefits to which [they are] entitled. Accordingly, . . .

plaintiffs have demonstrated a likelihood of success on the merits." *A.T. v. N.Y. State Educ.*

*Dep't*, No. 98 Civ. 4166, 1998 WL 765371, at *11 (E.D.N.Y. Aug. 4, 1998).

But there is one exception. Plaintiffs also argue that Defendants are required to provide

(rather than merely fund) A.F.'s 2:1 speech-language therapy sessions for 60 minutes once per

week. *See* Pls.' Mot. 18. On the record before the Court, Plaintiffs have not demonstrated a

likelihood of success on this claim. Plaintiffs have submitted an impartial hearing order that

requires the DOE to *fund* this specific service, but that order does not contain the same language

requiring the DOE to provide it directly upon the parent's request.  *Compare* Impartial Hr'g

Final Decision Case No. 183806 at 5-6 (ordering the DOE to fund 2:1 speech-language therapy

for A.F.) *with* Impartial Hr'g Order on Pendency Case No. 244877 at 5 (ordering the DOE to

provide A.F. with the services at issue upon the parent's request).  Nor did J.Z. specifically

request that particular service in the September 28, 2023 email to counsel for Defendants.  *See*

Sept. 28, 2023 Email.  Accordingly, while J.Z. may be entitled to *funding* for 2:1 speech-

language therapy for A.F., Plaintiffs have not demonstrated a substantial likelihood of success on

the merits regarding the direct provision of this service.

### B.  Irreparable Harm

To establish irreparable harm, plaintiffs must demonstrate "an injury that is neither

remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*,

888 F.2d 969, 975 (2d Cir. 1989).  And the injury "must be one requiring a remedy of more than

mere monetary damages." *Id*.  On the record before the Court, Plaintiffs have made a strong

showing that A.F. and E.S. are suffering and will continue to suffer irreparable harm absent the

Court's intervention.

The essential facts are uncontested.  A.F. has been deprived of various services to which

he is entitled and, as a result, has exhibited "significant delays in all areas–cognitively,

academically, socially, in communication, behaviorally, functionally and physically." J.Z. Decl.

¶ 33.  A.F.'s health has also been negatively impacted: without access to feeding therapy, for

instance, A.F. lost sixteen pounds between January 2023 and June 2023, resulting in physical

weakness and states of immobility. *See id*. ¶¶ 11, 13.

E.S. has also been deprived of various services to which he is entitled.  *See* S.S. Decl. ¶

27.  Without access to feeding therapy, "E.S. has regressed with his feeding and he no longer

will eat [even] pureed foods." *Id.* ¶ 13.  During the hearing, counsel for the Plaintiffs also noted

that without access to vision education services, E.S. has been unable to access the school

curriculum, and has thereby been denied full access to a FAPE.

Defendants do not deny these facts, and instead raise three arguments.  First, Defendants

argue that the feeding and nutritional harms experienced by Plaintiffs, while serious, do not rise

to the level of irreparable harm.  *See* Defs.' Opp'n 6 (arguing that E.S.'s feeding is sufficient "to

ensure that they receive the necessary nourishment," and that "A.F. also continues to eat

although his diet is limited.").  But regardless of whether A.F. and E.S. "continue[] to eat," they

are clearly suffering significant injury, as demonstrated by the uncontested evidence of

developmental delays and serious health issues such as significant rapid weight loss.  These

harms cannot be compensated monetarily and are irreparable.  *See D.D. ex rel. V.D. v. N.Y.C. Bd.*

*of Educ.*, No. 03 Civ. 2489, 2004 WL 633222, at *24 (E.D.N.Y. Mar. 30, 2004)

("[D]evelopmental delays suffered as a result of further placement delays cannot be fully

remedied by monetary damages [and therefore constitute irreparable harm]"), *vacated in part on*

*other grounds*, 465 F.3d 503 (2d Cir. 2006).  And even without those serious physical and mental

health issues, the denial of vital services that are necessary components of a free and adequate

public education, which Defendants are legally required to provide, by itself constitutes

irreparable harm.  *See D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006)

(noting that the "deprivation of mandated educational services constitutes irreparable harm"),

*amended on denial of reh'g*, 480 F.3d 138 (2d Cir. 2007); *cf. Mackey*, 386 F.3d at 161

(describing students' pendency rights).

Second, Defendants argue in essence that because A.F. and E.S. have already been

deprived of the services at issue for years, "[n]either student [] will suffer irreparable harm if the

DOE is afforded 60-days to find [feeding therapy] providers for both students and [vision education services] for E.S." Defs.' Opp'n 6. But Defendants' past violations of these students' rights cannot justify prolonging their deprivations. And the implementation delays here stem from Defendants' own inaction, even as the parents have diligently pressed for the enforcement of their children's rights, including in the lead-up to their preliminary injunction filing. *See* J.Z. Decl. ¶¶ 22, 31-32 (describing yearslong efforts at enforcing A.F.'s rights to the services at issue); S.S. Decl. ¶¶ 18, 21, 28 (describing yearslong efforts at enforcing E.S.'s rights to the services at issue).

A.F.'s mother sent an email requesting the direct provision of the services at issue on September 28, 2023, just one day after the impartial hearing officer rendered a decision in A.F.'s case providing that that she could directly request them. *See* Sept. 28, 2023 Email. As for E.S., the operative administrative decision requiring the provision of the services at issue was rendered on August 29, 2023. *See* Impartial Hr'g Second Order on Pendency Case No. 249741. This case was filed on November 5, 2023, *see* Compl., approximately two and a half months after the relevant administrative decision in E.S.'s case, and less than two months after the relevant decision in A.F.'s case. This motion for a preliminary injunction followed approximately four months later, on March 18, 2024. *See* Pls.' Mot. for Prelim. Inj., ECF No. 17. During the hearing, Plaintiffs' counsel explained that between September 28, 2023 and the filing of the preliminary injunction motion on March 18, 2024, Plaintiffs repeatedly communicated with the DOE seeking the provision of the disputed services, but received no substantive response. Plaintiffs have diligently pursued their rights; their claim of irreparable harm is not undermined by the fact that they made good faith efforts to resolve this dispute with Defendants before seeking the Court's intervention.

Third, in several post-briefing or post-hearing supplemental letters, Defendants represent that they have located therapists who are available to provide speech-language, occupational, and feeding therapy for A.F., and request that the Court hold Plaintiffs' motions in abeyance while Defendants attempt to implement the services at issue. *See* Apr. 17, 2024 Letter; Apr. 18, 2024 Letter. Setting aside the propriety of these late submissions, they actually confirm that many of the services at issue remain unfulfilled, with no definite timeline for their provision. As to E.S., Defendants' supplemental letters do not represent that they have secured providers to meet *any* of E.S.'s pendency needs. *See* Apr. 18, 2024 Resp. Letter 2. Thus, on the record, nothing has changed for E.S., who still faces irreparable harm absent relief from the Court.

As for A.F., some progress has been made, but significant gaps remain. With respect to occupational therapy, Defendants represent that a provider for A.F.'s occupational therapy services has been identified. *See* Apr. 17, 2024 Letter 1. But Plaintiffs represent that A.F.'s parent, J.Z., has not been contacted by Defendants about implementing this service, and "has no knowledge of any anticipated start date and provider for A.F.'s [occupational therapy]." Apr. 18, 2024 Resp. Letter 2. A.F.'s feeding therapy, is now set to begin on May 1, 2024, but Defendants represent that it is with 2:1, rather than 1:1, feeding therapy (which is required by his pendency). *See* Apr. 18, 2024 Letter; Apr. 25, 2024 Letter. While the apparent progress being made on feeding therapy is welcome, it remains incomplete, and the DOE's obligation to comply with A.F.'s pendency placement is not subject to unilateral modifications. *Ventura de Paulino*, 959 F.3d at 536 (asserting that a school district may not "modify[] a student's pendency placement without the parents' consent").

With respect to speech-language therapy for A.F., the risk of irreparable harm seems to have abated, in light of Defendants' uncontested representation that a "provider has been located

that is able to fulfill [A.F.'s] feeding therapy mandates (5x60 each), beginning immediately,"

Apr. 17, 2024 Letter 1, with services now scheduled to begin on May 1, 2024, *see* Apr. 25, 2024

Letter 1.  Thus, on the record before the Court, as of the date of this opinion and order,

emergency relief with respect to this service appears unnecessary.[5]

In sum, there is no genuine dispute that A.F. and E.S. have been denied access to a free

and appropriate public education, are regressing educationally, and are suffering negative health

outcomes that cannot be remedied by monetary relief.  Defendants have made some laudable

progress towards the provision of services for one of the two students, but even those recent

efforts—which follow months of unjustified delays and appear to have been prodded by this

litigation—remain incomplete.  Accordingly, barring the exception discussed above, Plaintiffs

have made a strong showing of irreparable harm.  *See M.W. v. N.Y.C. Dep't of Educ.*, No. 15

Civ. 5029, 2015 WL 5025368, at \*5 (S.D.N.Y. Aug. 25, 2015) (holding that the DOE's failure to

provide the student with a FAPE interrupted her diploma track education, would cause her to

regress academically, and thus constituted a strong showing of irreparable harm); *A.T.*, 1998 WL

765371, at \*10 ("[The student's] injury is actual and imminent because she is currently being

deprived of the free appropriate public education to which she is entitled under the IDEA[.]").

## C.  The Public Interest and the Balance of Hardships

The "public interest generally supports a grant of preliminary injunctive relief where, as

here, a plaintiff has demonstrated a substantial likelihood of success on the merits and a strong

showing of irreparable harm."  *V.W. ex rel. Williams v. Conway*, 236 F. Supp. 3d 554, 589

(N.D.N.Y. 2017).  The public interest weighs in favor of A.F. and E.S. receiving their mandated

---

[5] While the Court denies emergency relief on this issue as unnecessary, it expresses no view at this time on the propriety of permanent relief on this claim.

services.  Moreover, it is in the public interest to require the DOE to comply with the IDEA, with

the orders of its own impartial hearing officers, and with its legal obligation to implement

pendency.  *See Y.S. ex rel. Y.F. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 00711, 2021 WL 1164571,

at *5 (S.D.N.Y. Mar. 26, 2021) ("The public interest is always best served by ensuring . . . civil

rights are upheld after a plaintiff has shown a likelihood of success on the merits.).  Defendants

do not argue otherwise.

Defendants also do not contend that the balance of hardships weigh in their favor.  They

instead assert that logistical challenges in implementing relief and a shortage of available

providers have resulted in delays in providing the requisite services.  *See* Defs.' Opp'n at 7.  And

in their post-briefing letters, Defendants' counsel requests that the Court hold off on adjudicating

the motion for preliminary relief for 60 days "to allow the implementation of the students'

services to be completed."  Apr. 10, 2024 Letter 1, ECF No. 28.  The Court understands that

Defendants face logistical challenges in securing service providers for A.F. and E.S. and does not

dispute Defendants' good faith.  But the record before the Court is devoid of specifics as to what

efforts Defendants made to comply in the months immediately following the administrative

decisions ordered last fall.  *See, e.g.*, Nicholson Decl. ¶ 11, ECF No. 24 ("The DOE is actively

working to implement the services for A.F. and E.S."); Apr. 10, 2024 Letter 1 (representing

without citation to any admissible testimony that Defendants have "located a Speech and

Feeding Therapy provider" for A.F.).  As of the date of this opinion and order, none of the

services have yet been provided to the students.  *See* Apr. 25, 2024 Letter 1.  Accordingly, on the

available record, the Court cannot conclude that Defendants' recent efforts—which appear to

have been spurred by this litigation and Plaintiffs' preliminary injunction motion, and which

remain incomplete—have been sufficient to justify the denial or holding in abeyance of

17

Plaintiffs' motion.  Nor can the Court be assured that, absent its intervention, Defendants will

ensure the consistent and ongoing implementation of A.F.'s and E.S.'s services.

By contrast, the record is clear that A.F. and E.S. urgently need the services at issue.  And

there is no real dispute that Defendants are legally obligated to provide them, but have failed to

do so for several months.  Preliminary relief is therefore warranted.

**CONCLUSION**

For the reasons discussed herein, Plaintiffs' motion for preliminary injunction is

**GRANTED IN PART AND DENIED IN PART**.  Defendants are ordered to effectuate A.F.'s

and E.S.'s stay-put rights under the IDEA and implement immediately Plaintiffs' stay-put

pendency services, as follows:

**Defendants shall provide A.F. with the following services:**

   i.    1:1 occupational therapy 5x60 per week, and

  ii.    1:1 feeding therapy 5x60 per week.

**Defendants shall provide E.S. with the following services:**

   i.    1:1 vision education services 2x60 per week, and

  ii.    1:1 feeding therapy 2x60 per week.

To the extent Plaintiffs seek a preliminary injunction mandating 1:1 speech-language

therapy 5x60 minutes per week for A.F., that request is **DENIED without prejudice to renewal,**

in light of the prospective commencement of such services on May 1, 2024.  If A.F.'s services do

not begin by May 1, 2024, Plaintiffs shall notify the Court within two weeks.  To the extent

Plaintiffs seek Defendants' direct provision (as opposed to mere funding) of 2:1 speech-language

therapy sessions for 60 minutes once per week for A.F., that request is **DENIED** given Plaintiffs'

failure to demonstrate a likelihood of success on the merits of this claim.

The Clerk of Court is directed to terminate ECF No. 17.

SO ORDERED.


Dated: April 26, 2024
      New York, New York

_____
DALE E. HO
United States District Judge